THE STATE, EX REL. GENERAL CONTRACTORS ASSOCIATION OF AKRON AND VICINITY ET AL., *v.* WAIT, DIR. OF DEPARTMENT OF INDUSTRIAL RELATIONS, ET AL.*

*Judgment affirmed, 168 **Ohio St., 5.**

(No. 5758—Decided October 2, 1957.)

Mr. *Scott A. Belden,* for relators.

Mr. *William Saxbe,* attorney general, and Mr. *Thomas L. Startzman,* for respondents.

BRYANT, J.  This is an original action begun in this court by the filing of a petition for a writ of mandamus.  From the caption and the verification we learn that relators are the General Contractors Association of Akron and Vicinity and the Associated General Contractors of America, Inc., Akron Chapter.  It appears further that John Jacobson is president of the two organizations.

From the body of the petition we learn that the two organizations "at all times herein referred to, and for many years last past, have been bona fide organizations of employers engaged generally in the construction industry and principally in the locality of Summit, Portage and Medina Counties, Ohio."

Respondent, Hugh D. Wait, is described as "the duly appointed and acting Director of the Department of Industrial Relations of the state of Ohio."

Respondent, Charles M. Noble, is described as "the duly appointed, qualified and acting Director of the Department of Highways of the state of Ohio."

Since the filing of the petition, this court has approved the filing of an agreed journal entry substituting George J. Thormyer, Acting Director of the Department of Highways of the state of Ohio, in place of Charles M. Noble.  Thormyer was given leave to file his answer.  At the time of the filing of the petition a judge of this court allowed an alternative writ of mandamus and Director Wait of the Department of Industrial Relations and Acting Director Thormyer of the Department of Highways, through the Attorney General, have filed their demurrer to the petition.

In the petition we are informed that the "International Hod Carriers, Building and Common Laborers, Local No. 894,

is and has been for many years last past a bona fide labor union organization and that its members are engaged generally and classified as common laborers in the construction industry in the locality of Summit, Portage and Medina Counties, Ohio."

The petition alleges further that the relators and the aforesaid local No. 894 have entered into a written agreement pertaining to wages, hours and conditions of employment effective from May 2, 1957, until April 30, 1959. The petition further says that in May 1957 relators requested the Department of Industrial Relations to determine the prevailing rates of wages of mechanics and laborers for the class of work called for by any public improvement in Summit, Portage and Medina Counties "in the manner and form provided for by Revised Code Section 4115.01, *et seq.*" The petition then alleges that on or about June 15, 1957, "Director Wait made what is purported to be a determination of the prevailing wage for common laborers in Medina, Portage and Summit Counties, Ohio." The petition says that a copy of this determination is attached to the petition and designated as appendix "A." A careful examination of the file fails to disclose either an attached or unattached appendix "A."

At the back of the original copy of the petition are eight pages of mimeograph material. The first page appears to be a copy of a letter of August 2, 1957, from the Department of Highways to the relator Associated General Contractors of America, Inc. The second appears to be a copy of a letter of July 23, 1957, from the relator, Associated General Contractors of America, Akron Chapter, to the Department of Highways. The third appears to be a copy of a letter of June 26, 1957, from the respondent, Hugh D. Wait, Director of the Department of Industrial Relations, to attorney Scott A. Belden, counsel for relators. The fourth appears to be a copy of a letter of June 20, 1957, from one of the relators, Associated General Contractors of America, Akron Chapter, to the Department of Industrial Relations. The fifth appears to be a copy of a letter dated June 15, 1957, from respondent, Hugh D. Wait, to one of the relators, General Contractors Association of Akron. This latter letter appears to be a cover letter or transmittal letter accompanying the final three pages attached to the peti-

tion. At the top of the first of the three said pages appears the heading, "Determination of Prevailing Wage for Common Laborers—Medina, Portage & Summit Counties."

The petition alleges further that relators requested Industrial Relations Director Wait to conduct a hearing or rehearing for the purpose of making a record and that director Wait told them "there was no established procedure for conducting such a hearing" and further told them orally that the Administrative Procedure Act, Sections 119.01 to 119.13, both inclusive, Revised Code, had no application to such cases and that director Wait has refused to proceed under the Administrative Procedure Act.

The petition alleges further the request was made of the Highway Department for a "determination of wages to be paid for public improvement within the jurisdiction of the Department of Highways of the State of Ohio for common laborers in the locality of Summit, Portage and Medina Counties, Ohio." The petition says further that the Department of Highways later "advised that the Department of Highways had certified wage rates for common laborers for highway public improvements in Summit, Portage and Medina Counties, Ohio, on the 17th day of July, 1957."

Further, it is alleged that a demand was made on the Highway Department for the holding of a hearing or rehearing to form the basis for an appeal and that the Highway Department advised that correspondence on the subject should be directed to the Department of Industrial Relations.

The petition concludes with the allegation that both respondents have refused and still refuse in the making of a determination of the wages for mechanics and laborers in public improvements to proceed under the provisions of the Administrative Procedure Act.

The prayer of the petition is that a writ of mandamus be issued directing the respondents to hold a hearing or rehearing to make a record upon which an appeal to court may be taken with respect to the determination of prevailing rates of wages for mechanics and laborers. The petition prays further that respondents be enjoined from certifying or furnishing to any public authority such rates of wages until the determination

thereof has been made pursuant to the Administrative Procedure Act. (Sections 119.01 to 119.13, Revised Code.)

The respondents through the Attorney General have challenged the sufficiency of the petition by the filing of a demurrer. The first ground for the demurrer is that "relators have no beneficial interest in the act which they are seeking to have performed in that no legal right of the relators has been affected." The second ground of the demurrer is that relators are improperly seeking to use a writ of mandamus "to control the discretion of respondents." The third ground of the demurrer is "that there is no duty specifically enjoined by law upon respondents to act in the manner prayed for by the relators."

We shall consider the several grounds of the demurrer in the order in which they are set forth by respondents in their demurrer. The first ground of the demurrer is "that the relators have no beneficial interest in the act which they are seeking to have performed in that no legal right of the relators has been affected." Section 2309.08, Revised Code, setting forth the grounds for a demurrer provides in part as follows:

"The defendant may demur to the petition only when it appears on its face that:
" * * *
"(C) The plaintiff has not legal capacity to sue;
" * * *
"(J) The petition does not state facts which show a cause of action."

It is pertinent here to consider the first section of the Administrative Procedure Act (Section 119.01, Revised Code). In this section the definitions of "Agency" and "Adjudication" are important. The definition of "Agency" in that section is as follows:

"(A) 'Agency' means, except as limited by this division, any official * * * having authority to promulgate rules or make adjudications in * * * the department of industrial relations * * *."

It cannot be contended that this is a rule and it, therefore, remains to be seen whether or not this is an "adjudication" within the meaning of the statute. If it is, then the Administrative Procedure Act must be followed. If it is not, then it would appear there is no duty to do so.

The same section defines "Adjudication" as follows:

"(D) 'Adjudication' means the determination of the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person * * *."

We have searched the body of the petition in vain for any further light as to the form of organization of the relators herein. If its title correctly described it, the first relator is an association of general contractors of Akron and vicinity and the second relator is the Akron chapter of a nationwide association of general contractors. In the latter case it appears that the national organization is incorporated and we may infer that the so-called "Akron Chapter" is a branch thereof or has a charter of some sort from the national organization. As before stated, the petition merely says that relators are "bona fide organizations of employers" and that such employers are engaged generally "in the construction industry and principally in the locality of Summit, Portage and Medina Counties, Ohio." The question then arises as to what "rights, duties, privileges, benefits or legal relationships" of an organization of contractors as distinguished from the individual contractors are affected, either beneficially or harmfully, by the acts or failure to act on the part of the two respondents.

Nowhere in the petition is it made to appear that either of the relators, either in the past, the present, or the future, has or intends to enter into a contract with any public authority for the construction of any public improvement. If that be true, then neither of the relators has the capacity to bring an action such as this. They are not the real party in interest in such a case.

Section 2731.02, Revised Code, provides as follows:

"The writ of mandamus may be allowed by the Supreme Court, the Court of Appeals, or the Court of Common Pleas and shall be issued by the clerk of the court in which the application is made. Such writ may issue on the information of the party beneficially interested.

"Such writ shall contain a copy of the petition, verification, and order of allowance."

It, of course, has been held that a relator in order to main-

tain an action in mandamus must have a beneficial interest in the act sought to be compelled, and further, that if failure on the part of the public official to act cannot affect any legal right of relator, such relator may not maintain an action in mandamus. In the case of *State, ex rel. Skilton,* v. *Miller, Judge,* 164 Ohio St., 163, 128 N. E. (2d), 47, 49 A. L. R. (2d), 1279, branches one and two of the syllabus are as follows:

"1. A relator, in order to maintain an action in mandamus, must have a beneficial interest in the act sought to be compelled.

"2. If no legal right of a person can be affected by the failure of a public official to act in any given matter, such person does not have a beneficial interest such as will permit him to maintain an action in mandamus to require such official to so act."

See, also, *State, ex rel. Brophy,* v. *City of Cleveland,* 141 Ohio St., 518, 49 N. E. (2d), 175, in which the first branch of the syllabus is as follows:

"1. Where no legal right of a person can be affected by the failure of public officials to act in any given matter, he has no such beneficial interest as will permit him to maintain an action in mandamus against them to require official action in such matter."

We have assumed that relators are organizations of contractors and it follows that they do not enter into contracts with agencies of government for the construction of public improvements. But even if they did, it would not affect the result here. The Legislature decided many years ago that in contracts for the construction of public improvements, the rates paid to labor should not be a competitive item but that instead a determination should be made as to the prevailing rate of pay in the community where the improvement was to be built. It was provided further that the determination so made should be made available to all bidders and that it should be illegal to pay less than the predetermined prevailing rates of pay.

No person, contractor, or otherwise is required to bid or accept a contract for any such work. All who do submit bids do so upon an equal footing and basis.

Counsel for relators states that the fundamental issue in this case is whether the two respondents must comply with the provisions of Sections 119.01 to 119.13, both inclusive, Revised Code, known as the Administrative Procedure Act. The answer is clear that this is not an adjudication of the rights of any person.

For the reasons above set forth, the first and third grounds of the demurrer should be and hereby are sustained. The second ground we feel is without merit and is overruled with appropriate exceptions noted.

• The request for oral hearing also is denied.

*Judgment accordingly.*

PETREE, P. J., and MILLER, J., concur.

---

*Judgment affirmed, 168 Ohio St., 139.